**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KEVIN SHEILS,
                Plaintiff,

v.                                 No. 05-CV-399
                                      (GTS/DRH)

JOHN BUSSE, Sergeant; W. HATCH,
Corrections Officer; T. GRIFFIN, Corrections
Officer; and M. SEARS, Corrections Officer,

                Defendants,

---

**APPEARANCES:**                         **OF COUNSEL:**

KEVIN SHEILS
Plaintiff Pro Se
99-A-5444
Southport Correctional Facility
Post Office Box 2000
Pine City, New York 14871

HON. ANDREW M. CUOMO            STEVEN H. SCHWARTZ, ESQ.
Attorney General for the                Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Kevin Sheils ("Sheils"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, four DOCS employees, violated his constitutional rights

---

    [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

under the First and Eighth Amendments. Docket No. 1. Presently pending is defendants' renewed motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 67. Sheils opposes the motion. Docket No. 80. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The facts and procedural history of this case are set forth in the Report-Recommendation and Order filed January 28, 2008, familiarity with which is assumed. See Docket Nos. 63, 65. In a Memorandum-Decision and Order of the district court filed March 31, 2008, all claims were terminated except those alleging retaliation, failure to protect, and medical indifference. Docket Nos. 65 at 5, 77 at 1-2. The facts pertinent to defendants' present motion are related herein in the light most favorable to Sheils as the non-moving party. See subsection II(A) infra.

On August 5, 2004, Sheils was admitted to the Mental Health Unit Observation Unit at Great Meadow Correctional Facility ("Great Meadow") after attempting to commit suicide eight days earlier after being diagnosed with cancer. Docket Nos. 80-5 at 9, 80-6 at 83-84.[2] Defendants Griffin, Hatch, and Sears were involved in a use-of-force incident with Sheils while escorting him to the observation unit. Docket No. 80-7 at 4-7. After the incident, Sheils was given medical attention by Van Tassell, previously a defendant herein. Id. at 2-

---

[2] Defendants submitted certain exhibits on this motion which were not paginated. For ease and efficiency, citations will generally be made to Docket No. 80.

3. The injuries which Sheils sustained were of a "relative minor nature."³  Docket No. 67-2, Ex. H. at 7.  On August 5, Sheils was issued a misbehavior report for failing to comply with a direct order and strip-frisk procedures and exhibiting violent conduct. Id.,, Ex. C.  Sheils was found guilty of the disciplinary charge and was sentenced to six months in the Special Housing Unit ("SHU")⁴ and six months loss of good time, packages, telephones, and commissary privileges.  Sheils' sentence was later modified to one and three months respectively.  Sheils' Mem. of Law (Docket No. 80-4) at 18.

Sheils' filed three grievances, one on August 12 and two on August 19 pertaining to this incident but omitted mention of retaliation or failure to protect.  Docket No. 80-5 at 2-13.  Sheils filed four more grievances regarding his medical care, but none included allegations of a denial of medical care by any of the named defendants, retaliation by them for the filing of a lawsuit, or failure to protect him.  Id. at 13-21; Docket No. 67-2, Exs. D, E, F.⁵

---

    ³ Sheils' injuries consisted of bruised and reddened areas on his forehead, eyebrow, nose, mouth, right ear, and neck.  Docket No. 80-7 at 2-3.  There was no blood, the ranges of motion in Sheils' shoulder and elbows were good despite complaints of pain, and no other injuries were observed. Docket No. 80-5 at 43.  Following the altercation, x-rays were taken of Sheils' head, which were negative.  See generally Docket No. 67-2, Ex. L.  A dental examination was also negative for swelling.  Docket No. 80-6 at 57.

    ⁴SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2007).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

    ⁵ On August 13, 2004, Sheils filed two grievances.  The first, a grievance against Dr. Lee, contended that Dr. Lee misdiagnosed certain of Sheils' health problems leaving him deaf in his left ear.  See generally  Docket No. 67-2, Ex. D.  The second alleged that Nurse Ryan misdiagnosed other injuries suffered from the use-of-force incident, his vertigo, and his lesions which were actually cancer.  Docket No. 80-5 at 13-15.  Four days later, although filed under the same grievance number, Sheils filed another grievance concerning the medical treatment he received on August 13, 2004 concerning a small,

3

Sheils also filed multiple other grievances pertaining to the damage he suffered to his hands and wrists as a result of the altercation on August 5, 2004.  Docket No. 80-5 at 26-29, 31-38; see also Docket No. 80-5 at 62-65, 67, 75, 78-94.  However, Sheils' hand ailments had persisted since 1985, requiring at least seven surgeries and other major medical interventions.  Docket No. 80-5 at 62-65, 67, 86-87, 89-90, 94.  After the incident, Sheils had at least nine ambulatory health record entries receiving medical attention for his hands, wrists, and arms, as well as obtaining pain relievers.  Docket No. 80-5 at 44-53.

On December 9, 2004, Sheils complained of tightness in his tendons and fingers and was scheduled for an examination by a physician's assistant.  Docket No. 80-5 at 46.  Sheils underwent an electromyogram on January 13, 2005 and was exa,omed bu a physician's assistant two weeks later and by an orthopaedic surgeon on February 3, 2005.  Id. at 62-65, 67.  Additionally, Sheils was evaluated once before and once after a hand surgery he underwent on July 11, 2006.  Id. at 86-87.  Moreover, it appears that Sheils underwent another surgery in 2007, although his first scheduled surgery was cancelled due to his behavior with the surgeon.  Id. at 90.  Sheils also had at least one orthopaedic consultation in 2008.  Id. at 94.

Sheils also alleges that the altercation caused sinus problems, including a persistently dry and bloody nose which constantly excreted a discharge.  Docket No. 80-5 at 39-40, 48-53, 66, 72-74, 76-77.  Sheils began complaining about his nose and face in February 2005.

---

dime-sized, scabbed area.  See Docket No. 67-2, Ex. E; Docket No. 80-5 at 19-20.  The grievance was denied since Sheils was seen by three specialists, scheduled for psychiatric and neurological consultations, and scheduled to receive a litany of diagnostic procedures.  Id.  Lastly, on August 27, 2004, Sheils' lodged complaints concerning a lesion on his left shoulder.  See Docket No. 67-2, Ex. F.

4

Id. at 48. Between February and May, Sheils' ambulatory health record reflects nine instances where Sheils complained of pain in his nose and nasal cavity or was prescribed nasal spray to alleviate his symptoms. Id. at 48-53. Generally, medical staff found no nasal or facial deformities, no nasal congestion, and no signs or symptoms of blood or discharge. Id. at 48, 50-52. An x-ray taken on March 11, 2005 was negative. Id. at 49.

Sheils was also provided with a hearing aid on or about September 24, 2004. Docket No. 80-5 at 45; Docket No. 80-6 at 63. Sheils was instructed on the use of the hearing aid and how to exchange batteries in the event he required replacement. Docket No. 80-5 at 45. Sheils was seen by an audiologist on December 17, 2004 concerning his hearing aid. Id. at 47. On February 21, 2005, Sheils requested the return of his hearing aid. Id. It is unclear what transpired between December and February, but further records note another audiology visit on March 25, 2005. Id. at 73.

### III. Discussion

In his complaint, Sheils alleges that his First Amendment rights were violated when defendants retaliated against, and assaulted, him for previously filing a § 1983 complaint for an unrelated incident in a different correctional facility. Compl. at ¶ 2, 20-23. Additionally, Sheils alleges Eighth Amendment violations for deliberate indifference to a serious medical need and, liberally construing Sheils' complaint, failure to protect since "[e]ach defendant had the opportunity and duty to protect [Sheils] from the unlawful actions of the other defendants but each defendant failed and refused to perform such duty . . . ." Compl. at ¶ 2, 10. Defendants move for summary judgement on all remaining claims asserting that Sheils failed to exhaust his administrative remedies and there is no merit to his First or

Eighth Amendment claims.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). However, the mere existence of some alleged factual dispute

6

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

## B. Exhaustion

As a threshold matter, defendants contend that Sheils has failed to exhaust his administrative remedies. Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006). This exhaustion requirement applies to all prison condition claims. Porter, 534 U.S. at 532. "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate. Nussle, 534 U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)). Exhaustion for an inmate in DOCS custody is generally achieved through the DOCS Inmate Grievance Program (IGP).[6] See N.Y. Comp. Codes R. & Regs. tit. 7, § 701.1 et seq. (2001). However,

---

[6]"The IGP is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the

7

when inmates fail to follow the IGP, a court must conduct a three-part inquiry to determine if such failure is fatal to their claims. A court must consider whether

> (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

Administrative remedies are unavailable when there is no "possibility of [] relief for the action complained of." Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (citing Booth v. Churner, 532 U.S. 731, 738 (2001)). The test to determine the availability of an administrative remedy is an objective one asking whether "a similarly situated individual of ordinary firmness" would have deemed it accessible. Id. at 688. Courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies." Hargrove v. Riley, No. CV-04-4587 (DST), 2007 WL 389003, at *8 (E.D.N.Y. 2007) (internal citations omitted).

Here, Sheils has an undeniable familiarity with the grievance program and its appeals process having filed thirty-four grievances and numerous appeals since 2000. Docket No. 67-2, Ex. P(1). As noted supra, Sheils filed seven grievances during the time period immediately surrounding the use-of-force incident, but, none specifically concerned his remaining First and Eighth Amendment claims. See Docket No. 67-2, Exs. D, E, F, O;

---

superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir.2004) (internal citations omitted).

Docket No. 80-5 at 2-13, 19-20.[7]  Instead, Sheils' grievances focused on other unrelated health care issues, including (1) multiple alleged misdiagnoses regarding his loss of hearing, vertigo, bleeding lesions, and cancer; and (2) improper provision of medical care by a nurse tending to scabs on his body after the use-of-force incident.  See Docket No. 67-2, Exs. D, E, F; Docket No. 80-5 at 13-15, 19-20.  Additionally, the assault grievance Sheils filed solely addressed a previously dismissed use-of-force incident.  See Docket No. 67-2, Ex. O.  Accordingly, defendants correctly contend that Sheils failed fully to exhaust his administrative remedies by failing to file any grievances concerning (1) the provision of medical care which he received after the use-of-force incident at issue here, (2) the retaliation claims, and (3) the contentions surrounding Sheils' failure to protect claims.

The IGP was available to Sheils and he chose to use it on multiple occasions but failed to do so for these claims.  Additionally, Sheils failed to proffer any special circumstances which would have rendered the grievance process futile or inaccessible to excuse his failures to utilize the IGP.  Sheils attempts to rely on the fact that he felt he did not have sufficient time to file his grievances.  However, Sheils makes no showing why the allotted time was insufficient to file the grievances or why he could not obtain extensions of the deadlines if deemed necessary, particularly where he found the time sufficient to file the other thirty-four grievances.

Therefore, defendants' motion for summary judgment on this ground should be granted.

---

[7] Sheils' failure to identify by name in his grievances those defendants he contended were responsible does not constitute a failure to exhaust.  See Espinal v. Goord, 554 F.3d 216 (2d Cir. 2009).

9

## C. Retaliation[8]

To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). "Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone." Jackson v. Onondaga County, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008) (citing Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Additionally, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. Id. Conclusory allegations alone are insufficient. Id. (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

In this case, Sheils has not alleged facts sufficient to support a retaliation claim. There is no question that Sheils' filing prior law suits was conduct protected by the First Amendment. Compl. ¶ 55. However, Sheils has failed to allege facts from which one could conclude that any defendant's actions were motivated by Sheils' constitutionally protected activities. No defendant was aware of Sheils' prior lawsuit, filed four years earlier against another corrections officer at a different correctional facility. Defs. Statement of Material Facts ¶ 11. Thus, Sheils' accusations are insufficient to support a constitutional claim.

---

[8] Sheils appears to use his disciplinary hearing modification as proof that the DOCS administrators identified and disapproved of defendants' retaliatory actions in filing the misbehavior report which led to his disciplinary hearing and sentence. However, a sentence modification does not obviate a finding of guilt of the underlying disciplinary charge but merely serves to reduce the sentence imposed. A modification affords no basis for inferring improper motive by the charging officer.

Jackson, 549 F. Supp. at 215 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

Moreover, the Court of Claims previously determined that no an assault occurred as the use-of-force was reasonable and justified. Id. ¶¶ 8-9. This ruling (1) refutes any alleged wrongful conduct, and (2) negates Sheils' conclusory claims that he was assaulted in retaliation for filing the prior lawsuit. Thus, Sheils' contentions fail to state an actionable retaliation claim.

Accordingly, defendants' motion for summary judgment should be granted on this ground.

### D. Eighth Amendment

#### 1. Medical Treatment[9]

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. This provision encompasses the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and

---

[9] Liberally construing the complaint, Sheils contends that he received inadequate medical care for his loss of hearing. First, Sheils has not specifically pleaded this contention. Second, nothing in the record indicates that the remaining named defendants were personally involved in the provision of Sheils' medical care for his hearing. Third, despite the seriousness of the condition, Sheils' medical records indicate that he received hearing aids and was evaluated by medical staff and audiologists on multiple occasions. Docket No. 80-5 at 45, 45, 73; Docket No. 80-6 at 63. Thus, the medical staff were neither deliberately indifferent nor delayed necessary treatment. Thus, any such contention must fail.

prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison

12

officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104, (1976). "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. Id. at 703.  Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a § 1983 claim." Magee v. Childs, No. 04-CV-1089 (GLS/RFT), 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006).  Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

   In this case, it appears that Sheils has failed to allege or prove the subjective components of the analysis.  Initially, Sheils did not suffer any dental damage, broken bones, loss of motion in his joints, or wounds which were bleeding.  Thus, the minor injuries he sustained from the use of force -- reddening and slight swelling of his face and elbows -- is insufficient to constitute a serious injury.  See Goldston v. Albany County Sheriff Dep't, No. 02-CV-1004, 2006 WL 2595194, at *6 (N.D.N.Y. Sept. 11, 2006) (holding that injuries such as "lumps, bumps, bruises, scratches, minor cuts and temporary pains are not . . . sufficiently serious for constitutional purposes."); Rodriguez v. Mercado, No. 00-CV-8588 (JSR/FM), 2002 WL 1997885, at *8 (S.D.N.Y. Aug. 28, 2002) (holding no serious medical need in the absence of bruises or loss of consciousness).  However, Sheils' has proffered evidence of persistent injuries in conjunction, particularly the continued numbness and need for hand surgeries and the continued complaints of blood and other discharge emanating from his nasal cavity.  Viewing these conditions in the light most favorable to Shiels, a

reasonable person would conclude that these conditions rose to a sufficient level of severity.

Even assuming that Sheils has alleged a serious medical need, his allegations concerning the remaining defendants are insufficient to establish deliberate indifference. Following the use of force, Griffin, Hatch, and Sears promptly escorted Sheils to the medical unit for evaluation by a nurse. Docket No. 80-7 at 2-3. Upon arrival, Sheils was turned over to the medical staff and received treatment immediately. Id. Corrections officers were not involved in the provision of medical care but acted only to transport Sheils to and from the medical unit. At the conclusion of the use-of-force incident, they immediately transported Sheils to medical unit. The record contains no evidence evincing any intent to deny or delay treatment.

Additionally, to the extent that these officers or their sergeant might be liable for the ensuing medical care, the care provided to Sheils' was adequate and appropriate given the minor injuries he sustained. Moreover, the medical department arranged for additional x-rays, follow-up diagnostic tests, and medical evaluations when Sheils continued to complain of pain. All of these produced negative results. See Docket No. 67-2, Ex. L. These actions are also refute any contention of deliberate indifference.

Furthermore, the care that the medical staff and various specialists provided Sheils was more than adequate for his hand and nose. Sheils was seen at least nine times in four months by medical staff for hand complaints and was prescribed medication. Docket No. 80-5 at 44-53. Additionally, Sheils underwent an electrodiagnostic examination, met with multiple orthopaedic surgeons, and appears to have had two further corrective surgeries in the past four years. Id. at 62-65, 67, 86-87, 90, 94. Moreover, Sheils received comparable

14

treatment for his nasal complaints, undergoing multiple evaluations which produced unremarkable results and was prescribed nasal spray to alleviate whatever pain Sheils was experiencing. Id. at 48-53. Thus, the evidence in the record stands uncontradicted that no defendant acted with deliberate indifference toward Sheils.

Accordingly, defendants' motion on this ground should be granted.

### 2. Failure to Protect

Eighth Amendment obligations also include the duty to protect prisoners from other known harms. Haywood v. Woods, No. 01-CV-225 (LEK/DEP), 2007 WL 1834641 at *7 (N.D.N.Y. June 25, 2007) (citations omitted). "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1970); see also Johnson v. Smith, No. 03-CV-1050 (FJS/DEP), 2006 WL 1843292 at *8 (N.D.N.Y. June 29, 2006). Where the inmate is alleging "a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834 (citing Helling v. McKinney, 509 U.S. 25, 31-32 (1993)).

As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). "When examining a failure to protect claim under the Eighth Amendment, a court must determine whether the inmate has demonstrated that 1) he or she was incarcerated under conditions posing a substantial risk of serious harm, and 2) prison officials exhibited

15

deliberate indifference to the inmate's plight." Haywood, 2007 WL 1834641 at *7.

In this case, Sheils offers no evidence to indicate that he was incarcerated under any condition posing a substantial risk of harm. First, Sheils' contentions are conclusory and insufficient to assert a constitutional violation. See McEachin v. Goord, 2008 WL 1788440 at *5 (N.D.N.Y. April 17, 2008) (citations omitted).[10] Second, for the reasons discussed above, Sheils has proffered no facts from which any defendant knew or should have known that Shelis was threatened with any identifiable harm.

Accordingly, defendants' motion for summary judgment should be granted on this ground.

### E. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable

---

[10] In Sheils' memorandum of law, he argues that the strip-frisk procedure upon admission to the observation area of Great Meadow was unconstitutional and improperly executed. However, Sheils makes this claim for the first time in response to defendants' motion here. This contention is thus untimely. On its merits, however, the contention also fails as, even when viewed in the light most favorable to Sheils, defendants' execution of the strip-frisk appears consistent with DOCS procedures and displayed no evidence of any motive to deprive Sheils of his rights.

16

for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. As discussed supra, there have been no questions of fact raised as to Sheils' claims and, therefore, no further inquiry must be conducted.

### V.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Docket No. 67) be **GRANTED** and that judgment be entered for all defendants on all claims

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 27, 2009
       Albany, New York

_David R. Homer_
United States Magistrate Judge